IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| GARY LEE WILLIAMS, II, *by and through his next friend, Gary Williams, Sr.*, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 2:20-CV-04164-WJE ) |
| MILLER COUNTY, MISSOURI, *et al.*, | ) ) ) |
| Defendants. | ) |

## ORDER

Pending before the Court is Plaintiff Gary Lee Williams, II's motion to exclude testimony of Defendants' expert witness, Dr. Richard Dubinsky, and suggestions in support thereof. (Docs. 116, 117). Defendants have filed suggestions in opposition (Doc. 120), to which Mr. Williams has timely replied (Doc. 121). This issue is now ripe for consideration. For the reasons that follow, Mr. Williams' motion shall be granted.

### I. Background

This case arises from a head injury Mr. Williams' sustained while in custody at the Miller County Jail. (Doc. 72 at 5-18). Mr. Williams was arrested by Lake Ozark Police and booked into the jail on August 30, 2017, after previously reporting to his probation officer while intoxicated. (*Id.* at 6). On September 1, 2017, Mr. Williams fell from his bunk bed in his cell, sustaining a head injury. (Doc. 117 at 4; Doc. 120 at 1). He was transported by ambulance to Lake Regional Hospital where he received treatment from Dr. William Cravens, an emergency room physician, and then was released from the hospital. (Doc. 117 at 4; Doc. 120 at 1; Doc. 117-1 at 4). The discharge instructions directed Defendants to monitor Mr. Williams and call 911 if he exhibited "slurred or confused speech, weakness, or problems with coordination." (Doc. 117 at 4; Doc. 117-

2 at 18). Mr. Williams alleges that the discharge instructions were not followed because over the course of the next two days he exhibited those symptoms without his medical needs being met. (Doc. 117 at 4-5). An ambulance was not called until September 3, 2017, at which time Mr. Williams was taken back to Lake Regional Hospital where a CT scan revealed that he had bleeding in the fluid-filled space around the brain, and a collection of blood between the skull and surface of the brain. (Doc. 117 at 5; Doc. 120 at 1). Shortly thereafter, he was transported to University Hospital where he underwent emergency surgery. (Doc. 117 at 5).

Mr. Williams filed his claims on August 25, 2020, alleging that Defendants violated his Constitutional rights by (1) being deliberately indifferent to his serious medical needs and failing to protect him from harm (Count I), and (2) maintaining unconstitutional policies and providing inadequate training (Count II). (Doc. 72 at 18-28). Mr. Williams also alleges that Defendants were negligent while he was in their custody (Count III). (*Id.* at 28-31). Mr. Williams now moves to exclude part of the opinion of Dr. Dubinsky, Defendants' expert witness. (Doc. 117). The opinion is offered to address: "[D]id [Dr. Cravens] perform a reasonable and adequate evaluation and was it appropriate for [him] to release Mr. Williams from the hospital?" (Doc. 117-1 at 6). Dr. Dubinsky opines that: (1) it is more likely than not that if Mr. Williams had been admitted to the hospital when he first fell from his bunk bed, his outcome would have been better because healthcare providers would have more quickly discovered his underlying conditions, including his alcohol withdrawal, elevated liver enzymes, and a low platelet count, which makes it difficult to control bleeding; (2) admission to the hospital when he first fell from his bunk bed would have prevented the collection of blood between his brain and skull; and (3) if laboratory tests had been done, his underlying conditions, including his low platelet count, would have been discovered and the appropriate treatment administered. (*Id.* at 9; Doc. 120 at 2, 6). Mr. Williams argues that this

opinion of Dr. Dubinsky's should be excluded because it is speculative and irrelevant. (Doc. 117 at 9).

## II. Law

To determine the admissibility of expert testimony, the Court must apply Federal Rule of Evidence 702 and the test set out in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Under Rule 702, an expert witness may testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. *Daubert* reiterates the point stating, "the trial judge must determine . . . whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." 509 U.S. at 592. "Scientific knowledge" requires more than speculation and subjective belief; it implies validity, reliability, and relevance. *See id* at 590.

The question of whether expert testimony qualifies as scientific knowledge useful to the factfinder is left to the discretion of the trial judge. *See id.* at 589; *see also Ackerman v. U-Park, Inc.*, 951 F.3d 929, 933 (8th Cir. 2020). In fulfilling the "gatekeeper" role, the Court considers many factors to determine the reliability and relevance of expert testimony, including: "(1) whether the expert's theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) general acceptance." *Ackerman*, 951 F.3d at 932-33 (internal quotations omitted). "The main purpose of *Daubert* exclusion is to protect juries from being swayed by dubious scientific testimony." *United States v. McDaniel*, 925 F.3d 381, 385 (8th Cir. 2019) (quoting *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011)). As such, an expert's testimony

must be based on the expert's "education, employment, and practical personal experiences." *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001).

Generally, expert testimony should be liberally admitted, and its credibility tested through the adversarial process rather than excluded initially. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014) (citing *United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011)). If the expert's opinion is "so fundamentally unsupported that it can offer no assistance to the jury," it can properly be excluded. *Loudermill v. Dow Chem. Co*., 863 F.2d 566, 570 (8th Cir. 1988) (citation omitted). Also, it goes without saying that even if an expert is qualified to give an opinion, the opinion is admissible only if it is relevant. This is true not only as a general proposition, Fed. R. Evid. 402, but specifically with reference to expert testimony. Fed. R. Evid. 702(a); *Daubert*, 509 U.S. at 592.

### III. Analysis

#### A. *Dr. Dubinsky's Qualifications/Basis for Offering the Opinion*

Mr. Williams first argues that Dr. Dubinsky's opinions are speculative because Dr. Dubinsky is not an emergency room doctor and is not familiar with the standard of care for emergency room physicians. (Doc. 117 at 10-13). Defendants contend, however, that Dr. Dubinsky is qualified to opine on whether Mr. Williams' preexisting medical conditions contributed to his injuries. (Doc. 120 at 3-5). The Court finds Dr. Dubinsky's opinions reliable.

Dr. Dubinsky's testimony is based on his "education, employment, and practical personal experiences." *Wheeling Pittsburgh Steel Corp.*, 254 F.3d at 715. Dr. Dubinsky is a board-certified neurologist who has thirty years of experience. (Doc. 120-1 at 1-3). He also works periodically in emergency rooms, treating patients that present with urgent neurological issues. (Doc. 117-2 at 3).

Dr. Dubinsky's opinions are sufficiently based on his personal professional experiences, including his interactions with physicians while working in an emergency room, and the various records in this case. (*See* Doc. 117-1 at 1-2). This Court finds that Dr. Dubinsky's testimony is not speculative and does not lack foundation.

### B. *The Relevance of Dr. Dubinsky's Opinion*

Second, Mr. Williams argues that Dr. Dubinsky's testimony is irrelevant because it is an attempt to shift liability to Dr. Cravens. (Doc. 117 at 13-16). Mr. Williams primarily relies on *Leus v. C.R. Bard, Inc.*, No. 4:13-CV-00585-NKL, 2021 WL 4313607, at *5-6 (W.D. Mo. Sept. 22, 2021), to support this contention. (*Id.*). Defendants maintain that Dr. Dubinsky's opinion is submitted to evidence how Mr. Williams' preexisting conditions contributed to his injuries. (Doc. 120 at 5-7). However, Defendants do not explain why this fact is relevant to the issues in this case, and the Court concludes that it is not.

Dr. Dubinsky's testimony about the impact of Mr. Williams' preexisting conditions on his injuries is irrelevant. *See Leus*, 2021 WL 4313607, at *5-6. In *Leus*, the plaintiff claimed a medical device suffered from a design flaw. *Id.* at *1. The defendants attempted to introduce expert testimony demonstrating that inadequate subsequent medical care exacerbated the damage caused by the medical device. *Id.* at *5. The Court held that this expert testimony was irrelevant because "Missouri case law holds that once liability has been established a defendant is liable for the entirety of a plaintiff's damages, even those that result from an aggravation of a plaintiff's injuries due to the negligent provision of subsequent medical care." *Id.* Like the expert in *Leus*, Dr. Dubinsky's testimony is irrelevant because neither Dr. Cravens' subsequent medical care nor Mr. Williams' preexisting conditions pertain to whether Defendants fulfilled their Constitutional duties or were negligent while Mr. Williams was in their custody. Defendants do not contend that Dr.

Dubinsky's testimony insulates them from liability by demonstrating that they did not cause Mr. Williams' injuries or that Dr. Cravens was solely at fault. (*See* Doc. 117-1 at 1-6). Since Dr. Dubinsky's testimony does not diminish their liability, there is no other apparent purpose for this testimony. Further, Defendants do not explain how knowing "all [the] potential causes" of Mr. Williams' injuries will help the trier of fact understand or determine a fact in issue. (Doc. 120 at 7).

In short, Defendants have presented opinion testimony that Dr. Dubinsky is qualified to give – but the fact that Dr. Dubinsky is qualified to give an opinion does not make it relevant. And Defendants have not explained why Dr. Dubinsky's opinion that Dr. Cravens should have admitted Mr. Williams is relevant to Defendants' liability.

### IV. Conclusion

Mr. Williams' motion to exclude part of the testimony of Defendants' expert witness, Dr. Richard Dubinsky, is GRANTED as set forth herein. The Court finds that Dr. Dubinsky's testimony is reliable, but irrelevant, in part, in that it will not make a fact of consequence more or less probable. *See* Fed. R. Evid. 401.

IT IS, THEREFORE, ORDERED.

Dated this 17th day of March, 2022, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*

Willie J. Epps, Jr.
United States Magistrate Judge